No. 30,154.

THE MORTON COUNTY STATE BANK, *Appellee*, v. R. H. CRAWFORD, *Appellant*.

(5 P. 2d 1072.)

Opinion filed December 12, 1931.

*John C. King,* of Liberal, and *G. H. Terrill,* of Elkhart, for the appellant.
*Oscar F. Perkins,* of Elkhart, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This was an action to recover on a promissory note. The execution of the note and the amount due thereon were admitted. The defendant set up a counterclaim, and his right to recover on the counterclaim is the question for review. Judgment was rendered for the plaintiff, and the defendant appeals.

The facts relating to the counterclaim are as follows: The defendant, prior to April 28, 1927, owned and operated a garage at Elkhart and was sales agent for the Chevrolet automobile. On the 28th of April, 1927, he entered into a contract with R. L. Jewell for the sale of the business to Jewell. Their agreement was in writing and is as follows:

"This contract made and entered into in triplicate this 28th day of April, 1927, by and between R. H. Crawford, party of the first part, and R. L. Jewell, party of the second part, witnesseth:

"Whereas, it is agreed between the parties hereto that the first party is selling the good will of the Crawford Chevrolet Company unto the second party for a consideration of ten hundred fifty dollars ($1,050) cash which is deposited in escrow in the Morton County State Bank with a copy of this contract. Said amount to be held in escrow until the second party has a contract with the Chevrolet Motor Company for the sale of Chevrolet motor cars in the territory formerly held by the first party.

"After said contract is effected between the Chevrolet Motor Company and the second party the second party is to take over all the new cars on the floor at that time, together with all repairs, accessories, tires, tubes and shop equipment. All of the fixtures that the second party desires at the time he receives said business, at that time the second party is to pay to the first party the cost of such goods plus freight or express charges.

"The Morton County State Bank will have authority to deliver the good will money of $1,050 to the first party at the time the contract is signed between the Chevrolet Motor Company and the second party or one of the Chevrolet Motor Company's authorized agents.

"In case the second party is unable to effect a contract for the sale of Chevrolet motor cars as formerly held by the first party, the escrow money will be returned to the second party and this contract will be at an end.

"Witness our hands this 28th day of April, 1927.

"R. H. CRAWFORD, *First Party.*
"H. B. COMBS, *Witness.*                     R. L. JEWELL, *Second Party.*"

The contract was written by H. B. Combs, vice president and managing officer of the bank, at the request of the defendant. Jewell was not present when the contract was drawn and the defendant requested Combs, upon the contract being signed by Jewell, to collect the $1,050 in cash or in cashier's check. Jewell signed the contract the day it was written and Combs took his personal check on the First National Bank of Elkhart for the amount of the deposit. On this point Combs testified as follows:

"A. 12. The Morton County State Bank was escrow holder of the contract. The $1,050 was to be put up with the contract in the form of cash or cashier's check which was to be held until the contract was fully completed.

"Q. 24. When Mr. Crawford left the contract with you to procure the signature of Mr. Jewell and collect the $1,050 which was to be paid to Mr. Crawford under the terms of the contract, the understanding between you and Crawford then was that you were to collect cash and place that in escrow in the bank until the deal was finally terminated? A. Yes."

On the same day the defendant and Jewell met a representative of the Chevrolet Motor Company at Syracuse. The defendant re-

quested the cancellation of his contract for the reason that he was selling his agency. Jewell signed a contract with the Chevrolet Motor Company for the agency, and it was taken to the home office at Denver for investigation. In the meantime the defendant continued under his agency contract. The contract with Jewell was approved by the company on June 9, 1927, and mailed to Jewell at Elkhart. Jewell refused to receive the contract from the post office and it was returned to the company July 18, 1927. Three days after the deposit was made with the bank the cashier advised the defendant that they failed to get the money on the check. The defendant's reply was:

"The check did not have anything to do with it; that he had told them to get the money and told the bank they were in hard luck."

Jewell told the defendant that he could not carry out the contract for the reason that he was unable to get the financial backing that he had expected, and he also advised the Chevrolet Motor Company that he could not complete the contract. No further steps were taken by either party to complete the contract. The defendant continued in possession of the property, conducted the business and renewed his agency contract with the Chevrolet Motor Company.

The case was tried to the court without the aid of a jury. The court found generally for the plaintiff, and in rendering its decision, among other things, said:

"It appears that about the 28th of April Mr. Jewell made his application to the Chevrolet company for the contract with that company, which would authorize him to succeed Mr. Crawford in the business which he had agreed to purchase; that at a later date, and on the 9th day of June, the Chevrolet Motor Company executed the contract by signing and sending it by mail to Mr. Jewell at Elkhart. At the time it arrived at Elkhart Mr. Jewell found himself in a position that he could not carry out his contract, by reason of being unable to do so for financial reasons, and refused to accept the Chevrolet contract, and the result was it was returned to the Chevrolet company.

"The business of the Crawford Motor Company was never delivered to Jewell, and he never took any charge of it in any manner under this proposed contract. Mr. Crawford remained in possession of it, and later renewed or reinstated his contract with the Chevrolet Motor Company, and continued the agency."

The appellant contends that when the Chevrolet Motor Company approved and signed the agency contract with Jewell the appellee was obligated to deliver the escrow deposit to the appellant, and that the failure of the check did not relieve it from this obligation.

The bank was, of course, bound by the conditions under which the deposit was made, and if there was a violation of the escrow agreement the appellant was entitled to such damages as he sustained by reason of the failure of the bank to carry out the terms of the escrow. (*Smith v. Griffith,* 105 Kan. 357, 184 Pac. 725;.*Rowland v. First State Bank,* 121 Kan. 51, 245 Pac. 740.) The obligations of the appellee are created by the escrow agreement and, when the terms of this agreement and their force and effect are determined, it is not difficult to fix the measure of damages, but there can be no damage unless there is a violation of the escrow agreement.

We are first concerned with determining the bank's obligation under the contract. The contract was prepared at the instance of the appellant. It provides that the second party is depositing in escrow $1,050 in cash with a copy of the contract. "Said amount to be held in escrow until the second party has a contract with the Chevrolet Motor Company for the sale of Chevrolet motor cars in the territory formerly held by the first party. . . . The Morton County State Bank will have authority to deliver the good will money of $1,050 to the first party at the time the contract is signed between the Chevrolet Motor Company and the second party."

It will be noted that the written contract on its face recites as a fact that the cash "is deposited in escrow" to be held by the bank until Jewell has a contract with the Chevrolet Motor Company and when this is effected the bank "will have authority to deliver" the deposit to the appellant. Within the confines of the contract there is no obligation on the part of the bank to collect the money. The oral testimony adduced on the part of the appellant places a different construction on the escrow contract and adds to its terms. The contract, according to the testimony, was first signed by the appellant and after signing he directed the vice president of the bank to collect the money, either in cash or cashier's check, "which was to be held until the contract was fully completed." And further the testimony was: "The understanding between you and Crawford then was that you were to collect cash and place that in escrow in the bank until the deal was finally terminated." The escrow contract must be construed in the light of the surrounding circumstances, which include the written contract between the appellee and Jewell and the conversations had between the appellant and the vice president of the bank. When this is all considered we are brought to the conclusion that the escrow agreement was to the ef-

fect that the cash should be collected by the bank and held until the contract was fully completed. In order, therefore, to establish liability against the bank it was necessary for the appellant to prove that the contract had been fully completed and the failure of the bank to deliver the deposit on the completion of the contract. The evidence shows clearly that the contract was not completed; that the contract with the Chevrolet Motor Company was not accepted by Jewell, and that upon the appellant being notified that there was no deposit in the bank he retained possession of the property, continued in its management, and when he learned that Jewell was unable to complete the contract reinstated the agency contract. Under these circumstances no breach of the escrow contract is shown and the appellant was not entitled to recover.

The judgment is affirmed.